466 S.E.2d 459

Glenna Griffith COX and James F. Cox, Administrator and Personal Representative for the Estate of John Carl Cox, Plaintiffs Below, Appellees,

v.

Brian Keith AMICK, Shane Wilkinson, Chad Wines, Clifford Reed, Raymond K. Amick, Esta Amick, Brett Patton, Allstate Insurance Company and Municipal Mutual Insurance Company, an Insurer Licensed to Write Liability Insurance Policies in the State of West Virginia, Defendants Below, Appellees.

NATIONWIDE INSURANCE COMPANY, an Insurer Licensed to Write Automobile Insurance Policies in the State of West Virginia, Defendant Below, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Interpleader Below, Appellee.

No. 22799.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 1995.

Decided Dec. 11, 1995.

Mary H. Sanders, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Appellant.

Phillip D. Gaujot, Morgantown, for Appellee, Glenna Griffith Cox.

John R. Hoblitzell, Kevin A. Nelson, Crystal S. Stump, Kay, Casto, Chaney, Love & Wise, Charleston, for Appellee, James F. Cox.

McHUGH, Chief Justice:

The appellant, Nationwide Insurance Company (hereinafter "Nationwide"), appeals the December 8, 1994 order of the Circuit Court of Kanawha County which resolved two insurance coverage issues in favor of the appellees, Glenna Griffith Cox and James F. Cox, the administrator and personal representative for the estate of John Carl Cox. For reasons explained below, we reverse the order of the circuit court.

I.

This action arose out of an automobile accident which occurred on March 27, 1992, on U.S. Route 21 in Kanawha County when a vehicle driven by Brian Amick crossed the center line of the highway and struck a vehicle driven by John Carl Cox head on. John Carl Cox was killed and his wife, Glenna Griffith Cox, who was a passenger in the car, was seriously injured.

The facts leading up to the accident are in dispute; however, it is not necessary for us to resolve the disputed issues of fact as they will be resolved at trial. For purposes of this opinion, we will briefly discuss what is alleged to have occurred.

Evidently, Brian Amick and three other Sissonville High School students, Shane Wilkinson, Chad Wines, and Clifford Reed, decided to skip school before the first period class began on the day of the accident. Allegedly, the four boys shared two or three marihuana joints and drank a liter of vodka while driving around in Amick's car that morning.

The four boys also allegedly broke into a motor vehicle and robbed items which were within the motor vehicle. Subsequently, the four boys took the stolen items to a pawn shop in Charleston. After receiving money for the pawned items, Amick drove his car to a gas station. At the gas station Reed got out of Amick's car and allegedly was to take the money received from the pawn shop and buy concert tickets. Amick drove off with Wilkinson and Wines in the car. The accident occurred within minutes after Amick left Reed at the gas station.

The two insurance coverage issues relating to the car accident arose in a declaratory judgment action filed by the appellees in order to enforce uninsured and underinsured motorists coverage in a policy issued by Nationwide to John Carl Cox, the decedent. The declaratory judgment action had been filed as a third amended complaint in a pending tort action which sought recovery for the death of John Carl Cox and the personal injuries of Glenna Griffith Cox.

In the December 8, 1994 order which Nationwide appeals, the circuit court resolved one of the insurance coverage issues by entering a declaratory judgment that Nationwide must provide underinsured motorists coverage to Glenna Cox because Nationwide failed to show that Glenna Cox, as an "insured" under Nationwide's policy, was offered and rejected underinsured motorists coverage. In that same order the circuit court resolved the other insurance coverage issue by granting summary judgment against Nationwide upon determining that Clifford

Reed met the definition of an uninsured motorist pursuant to the Nationwide policy even though he was not the owner of a vehicle involved in the accident nor a driver or passenger in a vehicle involved in the accident at the time of the accident.

## II.

At the outset, we note that " '[a] circuit court's entry of summary judgment is reviewed *de novo.*' Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Davis v. Foley,* 193 W.Va. 595, 457 S.E.2d 532 (1995). Furthermore, " ' "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. pt. 4, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).' Syl. pt. 3, *Cannelton Industries, Inc. v. Aetna Casualty & Surety Co. of America,* 194 W.Va. 203, 460 S.E.2d 18 (1994)." Syl. pt. 3, *Davis, supra.*

On the other hand, the purpose of a declaratory judgment

> 'is to avoid the expense and delay which might otherwise result, and in securing in advance *a determination of legal questions* which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation.'

*Harrison v. Town of Eleanor,* 191 W.Va. 611, 615, 447 S.E.2d 546, 550 (1994) (*quoting Crank v. McLaughlin,* 125 W.Va. 126, 133, 23 S.E.2d 56, 60 (1942)) (emphasis provided). *See W.Va.Code,* 55–13–1 [1941] ("Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations[.]"). This Court has stated that "[i]t is generally within the discretion of the court as to whether it will take jurisdiction to enter or decline to enter

a declaratory judgment, and also the manner in which it is done, but such discretion cannot be abused." *Hall v. Hartley,* 146 W.Va. 328, 332, 119 S.E.2d 759, 762 (1961) (citations omitted). Furthermore, the Uniform Declaratory Judgments Act provides that "[a]ll orders, judgments and decrees under this article may be reviewed as other orders, judgments· and decrees." *W.Va.Code,* 55–13–7 [1941]. This Court has previously stated that when it reviews orders, judgments or decrees entered by a circuit court the findings of fact are reviewed under a clearly erroneous standard. However, questions of law are reviewed *de novo. See Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). *See also, Burnside v. Burnside,* 194 W.Va. 263, 265, 460 S.E.2d 264, 266 (1995) and *W.Va.R.Civ.P.* 52(a).

Therefore, because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard. Accordingly, we hold that a circuit court's entry of a declaratory judgment is reviewed *de novo.*[1] *See Continental Casualty Co. v. Coastal Savings Bank,* 977 F.2d 734, 736–37 (2d Cir. 1992) (The entry of a declaratory judgment is reviewed *de novo* on appeal); *Mitcheson v. Harris,* 955 F.2d 235, 237 (4th Cir.1992) ("[T]he appellate court must exercise its own judgment in reviewing" the entry of a declaratory judgment); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 791 F.2d 460, 462 (6th Cir.1986); *Sears, Roebuck & Co. v. American Mut. Liability Ins. Co.,* 372 F.2d 435, 438 (7th Cir.1967). *See also* 22A Am.Jur.2d *Declaratory Judgments* § 245 (1988) ("Although the entertainment of a declaratory judgment action is discretionary with the trial court, the exercise of such discretion is reviewable on a de novo basis by the Court of Appeals . . .") and

---

1. 28 U.S.C. § 2201(a) (1988), the federal statute regarding declaratory judgment actions, is similar to *W.Va.Code,* 55–13–7 [1941] in that its states, in relevant part: "Any such declaration shall be the force and effect of a final judgment or decree and shall be reviewable as such." (28 U.S.C. § 2201 was amended in 1993; however, the amendment does not affect this discussion). Because the wording of the statutes is similar we found an examination of federal case law to be helpful in establishing our standard of review.

6A James Wm. Moore, *Moore's Federal Practice* ¶ 57.08[2] at 57–36 (2d ed. 1995) (The majority rule, which is the better rule, is that the "appellate court may substitute its judgment for that of the lower court[ ]" when reviewing a declaratory judgment).[2]

## A.

The first issue raised by Nationwide on appeal is whether the circuit court erred by holding that Glenna Cox was entitled to underinsured motorists coverage in spite of the signed rejection of said coverage for all vehicles under the policy by the named policyholder, John Cox. The trial judge concluded that Nationwide was required to offer not only to John Cox, but also to Glenna Cox, the option of purchasing underinsured motorists coverage simply because she met the definition of an "insured" under the policy. Before addressing this issue, an understanding of the facts regarding the rejection of underinsured motorists coverage by John Cox is important.

When John Cox became a policyholder with Nationwide he had coverage on only one automobile. On December 1, 1987, John Cox married Glenna Cox. At the time of their marriage, Glenna Cox owned a 1986 Chevrolet Cavalier which was insured by Kentucky Central Insurance Company.

On January 3, 1992, John Cox added Glenna Cox's 1986 Chevrolet Cavalier to the Nationwide policy which he had prior to the marriage. On that day John Cox completed an insurance form requesting uninsured motorists coverage in the amount of $100,000.00 per person, $300,000.00 per accident and rejected underinsured motorists coverage.

Glenna Cox was not asked whether she waived underinsured motorists coverage. Moreover, Glenna Cox did not become a named policyholder on the declarations sheet, nor did she submit an application when her vehicle was added to the policy.

The Nationwide policy at issue provides: "For the payment of premiums in amounts we require and subject to all of the terms and conditions of this policy, *we agree to provide the coverages selected by the policyholder*." (emphasis added). Moreover, the Nationwide policy at issue defines "policyholder" as "the first person named in the declarations. The policyholder is the named insured under this policy and does not include the policyholder's spouse."

Clearly, the insurance policy issued to John Cox, the decedent, specifically and unambiguously addresses the issue before us: John Cox, as the policyholder, could elect not to select underinsured motorists coverage for every person, including his spouse, who would be an insured under the policy.

We are mindful that " ' "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).' Syl. pt. 1, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. pt. 1, *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995). Furthermore, " ' "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).' Syl. pt. 2, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. pt. 2, *Miller, supra.* However, this Court will not give effect to language in an insurance policy which conflicts with the intent of the uninsured and underinsured motorists statutes: " ' "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989).' Syl. pt. 4, *Russell v. State Auto. Mut. Ins.*

---

**2.** We are unclear as to why the circuit court entered summary judgment to resolve one insurance coverage issue while entering a declaratory judgment to resolve the other insurance coverage issue. However, because there were no disputed issues of fact raised on this appeal and because this Court reviews both a summary judgment and a declaratory judgment on a *de novo* basis, our review of the two issues before us on appeal will be conducted in the same manner.

*Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992)." Syl. pt. 3, *Miller, supra.*

The appellees argue, in effect, that the provisions of Nationwide's policy at issue conflict with the spirit and intent of *W.Va. Code*, 33–6–31(b) [1988] which details when and how an insurer shall offer the optional uninsured and underinsured motorists coverages.[3] We note that while uninsured motorists coverage is mandatory up to certain minimum limits, *W.Va.Code*, 33–6–31(b) [1988] requires the insurer to provide to the insured the option of selecting limits which are above the mandatory uninsured coverage requirement. In the case before us we are concerned with the proviso of *W.Va.Code*, 33–6–31(b) [1988] which mandates that each policy "*shall* provide an option to the insured ... of [underinsured motorists coverages and uninsured motorists coverage with limits which are above the mandatory uninsured coverage requirement]." (emphasis added).

▌ In syllabus points 1 and 2 of *Bias v. Nationwide Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), this Court explained the insurer's obligation pursuant to *W.Va.Code*, 33–6–31(b) [1988]:

1. Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed.

2. When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured.

More recently, this Court held that "*W.Va.Code* 33–6–31(b) [1988], mandates that when an insurer fails to prove an effective offer and a knowing and intelligent waiver by the insured, the insurer must provide the minimum coverage required to be offered under the statute." Syl. pt. 2, *Riffle v. State*

*Farm Mut. Auto. Ins. Co.*, 186 W.Va. 54, 410 S.E.2d 413 (1991).

▌ The appellees focus on the use of the term "insured" by the legislature in *W.Va. Code*, 33–6–31(b) [1988] and by this Court in the above syllabus points and conclude that the spirit and intent of *W.Va.Code*, 33–6–31(b) [1988] mandate that *every* insured covered by a certain insurance policy must be offered the optional coverages provided under that policy. If the insurer fails to prove that an effective offer was made to *every* insured and fails to prove that such offer was knowingly and intelligently rejected by *every* insured, then the insurer must provide the minimum coverage required to be offered pursuant to *W.Va.Code*, 33–6–31(b) [1988] to those insureds who did not reject the optional coverage.

We disagree with the appellees' contention. We acknowledge that the legislature and, thus, this Court, use the term "insured" when discussing the insurer's duty to offer the optional coverages pursuant to *W.Va. Code*, 33–6–31(b) [1988]. However, the legislature left unanswered in *W.Va.Code*, 33–6–31(b) [1988] the question of whether one insured could reject the optional coverages for all insureds covered under the policy.[4]

▌ This Court has held that " '[a] statute that is ambiguous must be construed before it can be applied.' Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992)." Syl. pt. 1, *State ex rel. Water Development Authority v. Northern Wayne County Public Service District*, 195 W.Va. 135, 464 S.E.2d 777 (1995). Furthermore, " ' "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. pt. 2, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992)." Syl. pt. 2, *State ex rel. Water Development Authority, supra.*

---

3. *W.Va.Code*, 33–6–31 was amended in 1995; however, the amendments do not affect our discussion in this opinion.

4. We note that although *W.Va.Code*, 33–6–31(c) [1988] defines the term "insured" as it is used in

that code section, *W.Va.Code*, 33–6–31 [1988] does not explicitly state whether one insured may reject the optional coverage for all insureds covered under the policy.

In 1993 the legislature clarified its intent when it enacted *W.Va.Code*, 33–6–31d which outlines how the insurer must offer the optional uninsured and underinsured coverages.[5] The legislature explained that

> [t]he contents of the form described in this section which has been signed by any named insured shall create a presumption that all named insureds under the policy received such an effective offer of the optional coverages described in this section and that all such named insureds exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form. Such election or rejection is binding on all persons insured under the policy.

*W.Va.Code*, 33–6–31d(c) [1993].

[13] We point out that because there is no question that both *W.Va.Code*, 33–6–31 [1988] and *W.Va.Code*, 33–6–31d [1993] relate to the provision of uninsured and underinsured motorists coverages, it is appropriate for this Court to review those code sections in *pari materia* in order to ascertain the legislature's intent:

> 'Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent. Accordingly, a court should not limit its consideration to any single part, provision, section, sentence, phrase or word, but rather review the act or statute in its entirety to ascertain legislative intent properly.' Syl. pt. 5, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975).

Syl. pt. 1, *State ex rel. Lambert v. County Commission of Boone County*, 192 W.Va. 448, 452 S.E.2d 906 (1994).

The appellees acknowledge the above language in *W.Va.Code*, 33–6–31d(c) [1993], but argue that because it was enacted in 1993, one year after the accident occurred, it is new law which does not apply to them. We

disagree. We believe the above quoted language from *W.Va.Code*, 33–6–31d(c) [1993] merely clarifies the legislature's original intent when it enacted *W.Va.Code*, 33–6–31 [1988]. *Cf. State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 569, 396 S.E.2d 737, 750 (1990) (This Court rejected a similar argument that a 1988 amendment to *W.Va. Code*, 33–6–31(b) was a change in the law rather than a clarification of existing law). Moreover, as a practical matter, it would be very time consuming and unreasonable to expect an insurer to offer every person who would be an insured under the policy the optional coverage and then ascertain whether the optional coverage was rejected.

Accordingly, we hold that under *W.Va. Code*, 33–6–31d [1993] a knowing and intelligent rejection of optional uninsured and underinsured motorists coverages by any named insured under an insurance policy creates a presumption that all named insureds under the policy received an effective offer of the optional coverages and that such person exercised a knowing and intelligent rejection of such offer. The named insured's rejection is binding on all persons insured under the policy.

Thus, in the case before us, John Cox's rejection of underinsured motorists coverage is binding on Glenna Cox. The circuit court, therefore, erred in entering a declaratory judgment that Nationwide must provide underinsured motorists coverage to Glenna Cox.

### B.

The second issue raised by Nationwide on appeal is whether the circuit court erred by holding that the language of the policy issued by Nationwide provides uninsured motorists coverage to the appellees for the actions of Reed even though Reed did not own a vehicle involved in the accident nor was he in a vehicle involved in the accident when the accident occurred. As we previously stated, although allegedly Reed spent most of the day riding around in Amick's car, he got out of the car shortly before the

---

5. This Court noted in *Foutty v. Porterfield*, 192 W.Va. 105, 107 n. 5, 450 S.E.2d 802, 804 n. 5 (1994) that the enactment of *W.Va.Code*, 33–6–31d may affect the application of this Court's holding in *Bias, supra.*

accident occurred. The appellees maintain that Reed is liable for the damages they have sustained from the car accident under a joint enterprise theory and/or because he substantially assisted Amick in causing the car accident. *See Price v. Halstead,* 177 W.Va. 592, 355 S.E.2d 380 (1987).

The Nationwide policy at issue provides for uninsured motorists coverage. More specifically, the coverage agreement states:

> **We** will pay compensatory damages as a result of **bodily injury** and/or **property damage** suffered by **you** or a **relative** and due by law from the <u>owner or driver</u> of an <u>**uninsured motor vehicle.**</u> Damages must result from an accident arising out of the:
>
> 1. ownership;
> 2. maintenance; or
> 3. use;
>
> of the **uninsured motor vehicle.**

(bold indicates emphasis supplied and underlining indicates emphasis added). The above language clearly and unambiguously does not include a person such as Reed. *See* syl. pt. 1, *Miller, supra,* (Where provisions of an insurance policy are clear and unambiguous they are not subject to judicial interpretation). In fact, the language above clearly states that the uninsured motorists coverage compensates for damages sustained from the "owner or driver of an uninsured motor vehicle." [6] Reed was not the owner or driver of an uninsured motor vehicle which was involved in the car accident.[7]

The appellees make two arguments in support of their contention that Nationwide's policy is ambiguous, and thus, should be "strictly construed against the insurance company and in favor of the insured." [8] Syl. pt. 4, in part, *National Mutual Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987). First, the appellees rely on the following language found in Nationwide's "acknowledgement of coverage selection and rejection uninsured motorists and underinsured motorists coverage" form (hereinafter "acknowledgment form"): "Uninsured Motorists Coverage (UMC) is MANDATORY in West Virginia and must be written on every automobile policy. UMC provides financial protection for bodily injury of property damage caused by an *at fault uninsured or at fault hit-and-run driver.*" (emphasis added). The appellees maintain that the above language is inconsistent with the language found in the policy regarding uninsured motorists coverage in that the above language could reasonably be construed as providing coverage for damages caused by an "at-fault uninsured" whereas the policy, as we have previously stated, provides coverage for damages caused by "the owner or driver of an uninsured motor vehicle." *See* syl. pt. 4 of *Soliva v. Shand, Morahan & Co., Inc.,* 176 W.Va. 430, 345 S.E.2d 33 (1986) (" 'In ascertaining the intention of the parties to an insurance contract, the test is what a reasonable person in the insured's position would have understood the

---

**6.** The language in Nationwide's policy tracks the following language found in <u>W.Va.Code</u>, 33–6–31(b) [1988]: A motor vehicle policy "shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the <u>owner or operator of an uninsured motor vehicle</u>" up to certain limits as explained in that code section. (emphasis added).

**7.** Nationwide maintains that the Amick vehicle had the mandatory liability insurance required by <u>W.Va.Code</u>, 17D–4–2 [1979]. Thus, Nationwide correctly points out that the Amick vehicle does not meet the definition of an "uninsured motor vehicle" under the Nationwide policy which defines the term as a vehicle "for which there is no bodily injury liability bond or insurance at the time of the accident in at least the

amounts required by the West Virginia Motor Vehicle Safety Responsibility Law [set forth in <u>W.Va.Code</u>, 17D–1–1, et seq.]." Thus, any argument by the appellees that Reed's use of Amick's vehicle implicates uninsured motorists coverage under the Nationwide policy is misplaced because the policy clearly and unambiguously states that the "[d]amages must result from an accident arising out of the ... <u>use</u>[ ] of the **uninsured motor vehicle.**" (underlining indicates emphasis added and bold indicates emphasis supplied).

**8.** In the December 8, 1994 order, the circuit court found that an ambiguity "exists in [John and Glenna Cox's] coverage with Nationwide when the Notice of Acknowledgement of Coverage Selection and Rejection form issued to [John Cox] is compared with the policy issued to [John Cox]."

words of the policy to mean.'" (citation omitted)).[9]

More specifically, the appellees focus on the phrase "at fault uninsured or at fault hit-and-run driver" found in the acknowledgement form. The appellees argue that the phrase "at fault uninsured" in the acknowledgement form is not immediately followed by the word "driver" or "owner" unlike the phrase "at fault hit-and-run driver"; therefore, the appellees conclude that uninsured motorists coverage exists when there is an at fault uninsured regardless of whether the uninsured is the owner or driver of a motor vehicle involved in the accident.

We disagree with the appellees' contention. As stated by Nationwide, "[u]nder common [E]nglish construction, when two terms modify the same word and are separated by a conjunction, it is not necessary to repeat the modified word along with each term." Clearly, a reasonable person in an insured's position would understand that the word "driver" in the acknowledgement form is modified by both the phrase "at fault uninsured" and the phrase "at fault hit-and-run driver." Thus, we find the appellees' contention to be without merit.

Second, the appellees contend that the Nationwide policy is ambiguous because the coverage is labeled "uninsured motorists coverage" on all forms which may reasonably be construed as providing coverage for damages caused by one other than a driver, owner, or even passenger of a motor vehicle. In other words, the appellees argue that Reed is a "motorist" under the insurance policy because he is a person who travels by automobile.

The appellees rely upon *Green v. State Farm Ins. Companies*, 206 Ga.App. 478, 426 S.E.2d 3 (1992). In *Green* the issue was whether a Georgia statute, "which requires that no-fault benefits be provided to non-resident motorists involved in motor vehicle accidents in Georgia and insured by insurers doing business in Georgia, covers 'motorists' who are on foot rather than in their cars at the time of the accident." *Green*, 426 S.E.2d at 4. In arriving at its conclusion the Court of Appeals of Georgia relied upon a dictionary meaning which defines the term "motorist" as "'a person who travels by automobile.'" *Id.* at 5 (citing Webster's New Collegiate Dictionary, p. 745 (150th anniv. ed. 1981)). The Court of Appeals noted that "'[t]he dictionary does not specify 'at the moment of travelling' or 'while travelling' in defining motorist,'" and concluded that "the addition of such a restriction ... would be contrary to common usage and understanding of the word." *Id.* Thus, the Court of Appeals found that the term "motorist" included a pedestrian who was struck by a car while walking back to her car after making a phone call.

We decline to apply the reasoning in *Green* to the facts before us. As we previously stated, the language in the Nationwide policy before us explicitly states that uninsured motorists coverage compensates for damages caused by the owner or driver of an uninsured motor vehicle. Additionally, the policy explicitly states that the damages must result from an accident arising out of the ownership, maintenance or use of an uninsured motor vehicle. Thus, the Nationwide policy clearly and unambiguously does not provide uninsured motorists coverage under the set of facts we have before us.

Moreover, *Green* is distinguishable from the case before us. In *Green* the "motorist," who had an insurance policy, was seeking coverage under that policy for damages sustained as a pedestrian while walking back to her car after making a phone call. Reed, the pedestrian in the case before us, was not injured in the accident, and, therefore, is not seeking coverage under his own insurance policy.

9. In *National Mutual Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 741 n. 6, 356 S.E.2d 488, 495 n. 6 (1986) this Court rejected "that portion of the reasoning in *Soliva* which is based on the general rule that a party to a contract has a duty to read the instrument." This Court concluded that because an insurance contract is a contract of adhesion, an insured is not presumed to know the contents of an insurance contract. It is unnecessary to the resolution of this case for this Court to resolve any conflict which may exist between *Soliva, supra,* and *McMahon & Sons, supra.*

Accordingly, we hold that when an insurance policy clearly and unambiguously provides uninsured motorists coverage for damages suffered by the insured or a relative from the "owner or driver of an uninsured motor vehicle" if such damages have resulted from an accident arising out of the ownership, maintenance or use of the uninsured motor vehicle, the insured or relative may not recover damages pursuant to his or her uninsured motorists coverage from a person who was not occupying an uninsured motor vehicle involved in the accident when it occurred and who was not the owner or driver of the uninsured motor vehicle involved in the accident even though such person may be liable to the insured or relative under other appropriate causes of action.

Thus, we conclude that the circuit court erred by holding that Reed met the definition of an uninsured motorist pursuant to the Nationwide policy at issue in the case before us even though he was not the owner of a vehicle involved in the accident nor was he in a vehicle involved in the accident at the time of the accident.[10] The circuit court, there-. fore, should not have entered summary judgment for the appellees on this issue.

### III.

Based on all of the above, we reverse the December 8, 1994 order of the Circuit Court of Kanawha County.

Reversed.

CLECKLEY, Justice, concurring:

I am in wholehearted agreement with the excellent majority opinion of Chief Justice McHUGH. Because I question the circuit court's granting of declaratory judgment in this case, I write separately only to underscore the discretionary nature of declaratory judgments.

The Declaratory Judgment Act, W.Va. Code, 55–13–1 (1941), empowers a circuit court to grant declaratory relief in a case of actual controversy. *See generally Mongold*

v. *Mayle*, 192 W.Va. 353, 452 S.E.2d 444 (1994). To be clear, if there is no "case" in the constitutional sense of the word, then a circuit court lacks the power to issue a declaratory judgment. A declaratory judgment may not be used to secure a judicial determination of moot questions or where no controversy exists.

The Act does not itself mandate that circuit courts entertain declaratory judgments; rather, the Act makes available an added anodyne for disputes that come within the circuit courts' jurisdiction. It serves a valuable purpose. It is designed to enable litigants to clarify legal rights and obligations before acting upon them. Because the Act offers a window of opportunity, not a guarantee of access, the courts, not the litigants, ultimately must determine when declaratory judgments are appropriate and when they are not. Consequently, circuit courts retain substantial discretion in deciding whether to grant declaratory relief. As we have stated in other contexts, the Declaratory Judgment Act neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies. *See Gentry v. Mangum*, 195 W.Va. 512, 521, 466 S.E.2d 171, 180 (1995). In *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the United States Supreme Court affirmed the uniquely discretionary nature of the federal Declaratory Judgement Act: It is " 'an enabling Act, which confers a discretion on the courts rather than an absolute right on the litigant.' When all is said and done . . . 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of . . . judicial power.' " —— U.S. at ——, 115 S.Ct. at 2143, 132 L.Ed.2d at 223–24, *quoting Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952), and *Public Serv. Comm'n v. Wycoff*

---

10. Our holding that the appellees may not recover under the uninsured motorists provision of the *Nationwide* policy for any damages caused by Reed does not in any way resolve the issue of whether or not Reed is liable to the appellees under a joint enterprise theory and/or under the theory that Reed substantially assisted Amick in causing the accident.

*Co.,* 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291, 296 (1952), respectively.

Because the granting of declaratory relief is not mandatory, circuit courts may limit its use. I believe that limiting the use of declaratory judgment actions serves important policies such as avoiding rendering opinions based on purely hypothetical factual scenarios, discouraging forum shopping, encouraging parties to pursue the most appropriate remedy for their grievances, preserving precious judicial resources, and promoting comity.

This Court has not had occasion to speak directly to what factors are relevant in determining whether a declaratory judgment action should be heard and decided. I believe there are four factors that are significant. The first critical factor is whether the claim involves uncertain and contingent events that may not occur at all. The second important factor is the extent to which the claim is bound up in facts. Courts are more likely to find a claim is justiciable if it is of an intrinsically legal nature, *see, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752, 763 (1983), and less likely to do so if the absence of a concrete factual situation seriously inhibits the weighing of competing interests.

The third factor is the absence or presence of adverseness. The circuit court should ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941). It would appear that the following is

relevant: (1) where all affected parties are before the court and (2) where the issues as framed permit specific relief through a decree of a conclusive nature, as opposed from an opinion advising what the law would be upon an hypothetical state of facts.

The fourth factor is the most important in my judgment. A circuit court should always ask whether granting the relief would serve a useful purpose, or put another way, whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest.[1] The hardship prong turns on whether the challenged action creates a real or immediate dilemma for the parties.

Thus, the factors discussed above must be not be applied mechanically but, rather, with flexibility. In granting declaratory relief, a circuit court should be reasonably convinced that allowing the case to proceed, here and now, would serve a useful purpose and would be of great practical assistance to all concerned. Not only should the utility of the decree be obvious, but the utility should have special force in the challenged and underlying action.

The standard of review that applies to a circuit court's discretionary decision to withhold a declaratory judgment is more problematic. Although I recognize that circuit courts have some discretion to grant or withhold declaratory relief, and that this discretion must be exercised cautiously when matters of either public or constitutional dimension are implicated, the decision ultimately must be based on a careful balancing of efficiency, fairness, and the interests of both the public and the litigants. As to whether to grant or withhold declaratory relief, our review must offer a blend of defer-

---

1. In West Virginia, we have created a practice of permitting declaratory judgment actions to go forward as a matter of right. This is especially true when an insurance company seeks to deny coverage. There is no doubt that an insurer is justified in its attempt to seek declaratory relief in insurance coverage cases. Indeed, the insurer complies with its duty to defend by seeking declaratory judgment from the circuit court on the issue of insurance coverage prior to the trial on the liability issue. Of course, these issues are important, but they do not compel a circuit court to entertain a declaratory judgment. There is clearly no support in West Virginia jurisprudence for the position that an insurer in denying coverage must immediately file a declaratory judgment action. All that is required of the insurer is to seek a circuit court's determination on the coverage issue, instead of refusing to defend based solely upon its own determination of coverage. I suggest an independent declaratory judgment is not necessary to accomplish this objective.

ence and independence. While appellate courts may review a circuit court's exercise of this wise judicial administration only for abuse of discretion, this review must be meaningful.

Some courts afford plenary review, but others affirm unless the circuit court's decision constitutes an abuse of discretion. *Compare, e.g., Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990) (utilizing plenary review), *and Gayle Mfg. Co. v. Federal Sav. & Loan Ins. Corp.,* 910 F.2d 574, 578 (9th Cir.1990) (same), *with, e.g., Christopher P. v. Marcus,* 915 F.2d 794, 802 (2nd Cir.1990) (utilizing abuse of discretion standard), *cert. denied,* 498 U.S. 1123, 111 S.Ct. 1081, 112 L.Ed.2d 1186 (1991), *and Kunkel v. Continental Cas. Co.,* 866 F.2d 1269, 1273 (10th Cir.1989) (same). I believe we should capture a middle ground, expressing our preference for a standard of independent review when passing upon a circuit court's decision to eschew declaratory relief. This standard encourages the exercise of independent appellate judgment if it appears that a mistake has been made. *See El Dia, Inc. v. Hernandez Colon,* 963 F.2d 488, 492 (1st Cir.1992); *National R.R. Passenger Corp. v. Providence & Worcester R.R. Co.,* 798 F.2d 8, 10 (1st Cir.1986). Thus, independent review invokes a standard more rigorous than abuse of discretion but less open-ended than *de novo* review.

As to rulings made on the merits of the declaratory judgment action, our review should be, as the majority opinion states on the ultimate question presented we will review *de novo,* but as to questions of fact we utilize Rule 52(a) of the West Virginia Rules of Civil Procedure and apply the clearly erroneous rule.

Considering what I discuss above, I have grave reservations whether the circuit court acted reasonably and wisely in entertaining this declaratory action. Nevertheless, I must respect the circuit court's discretion where error is not obvious, and, accordingly, I concur.