459 S.E.2d 406

**Barbara S. MILLER and Mark L. Miller, Plaintiffs**

v.

**Hazel V. LEMON, Executrix of the Estate of Phillip M. Lemon, Hazel Lemon and Federal Kemper Insurance Company, Defendants.**

No. 22589.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided June 19, 1995.

■■■■■■■■■■■■■■■■■■

James M. Barber, Hunt & Barber and Frank T. Litton, Jr., Litton & Litton, Charleston, for plaintiffs.

Mary H. Sanders and James Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Federal Kemper Ins. Co.

Heather Heiskell Jones and Robert A. Lockhart, Spilman, Thomas & Battle, amicus curiae, West Virginia Ins. Federation.

McHUGH, Chief Justice:

This case is before this Court upon the certified question from the Circuit Court of Ritchie County, West Virginia. The plaintiffs are Barbara S. Miller and Mark L. Miller and the defendants are Hazel V. Lemon, Executrix of the Estate of Phillip M. Lemon, Hazel Lemon and Federal Kemper Insurance Company.

## I.

The facts of this case are not in dispute. On May 14, 1990, Barbara Miller sustained injuries when the vehicle in which she was a passenger was struck by another vehicle driven by Phillip Lemon. Mr. Lemon, who was killed in the accident, was uninsured.

At the time of the accident, the Millers were insured by Federal Kemper Insurance Company (hereinafter "Federal Kemper"). Automobile insurance policy number R–0555998 provided coverage for two vehicles, a 1977 Ford Mustang and a 1988 Oldsmobile Delta Eighty-eight.

The Millers paid a total policy premium of $214. Set forth on the declarations page of the policy[1] was a breakdown of the total policy premium including the following premiums for each of the two vehicles: $94 for bodily injury liability coverage; $5 for medi-

cal payments coverage; $7 for uninsured motorists bodily injury coverage; and $1 for uninsured motorists property damage coverage.[2]

It has been Federal Kemper's contention throughout this litigation that the Millers received a $58 discount on their total policy premium, as compared to what they would have paid had two separate policies been issued. Upon examination of the declarations page, however, no discount is evident, either for the total policy premium or for any particular coverage. Nonetheless, the Millers do not dispute that they received a reduced rate on the total policy premium, or a multi-car discount.

The insurance policy in question contained the following anti-stacking language:

### OUR LIMIT OF LIABILITY:

1. Regardless of the number of **insureds,** claims made, vehicles or premiums shown in the Declarations or vehicles involved in the accident, the most that we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE ... shown in the declarations.

By settlement agreement dated June 23, 1993, Federal Kemper paid to the Millers the sum of $25,000 in uninsured motorist benefits, pursuant to the terms of the policy which provided for uninsured motorist bodily injury coverage in the amount of $25,000 per person/$50,000 per accident. Left in dispute then was the issue of whether the Millers are entitled to stack uninsured motorists coverage in order to claim an additional $25,000 of uninsured coverage under the policy.

The Millers instituted a declaratory judgment action[3] in the Circuit Court of Ritchie County seeking a determination of the amount of uninsured motorist coverage available to them from Federal Kemper. By

1. This policy was effective from 2/4/90 through 8/4/90.

2. Previously, automobile policy number R–0555998 issued to the Millers and effective from 8/4/89 through 2/4/90, covered only the 1977 Ford Mustang. The total policy premium was $136. The Millers paid $122 for bodily injury

liability coverage; $6 for medical payments coverage; $7 for uninsured motorists bodily injury coverage; and $1 for uninsured motorists property damage coverage.

3. *See* Uniform Declaratory Judgments Act, *W.Va. Code*, 55–13–1, *et seq.*

order dated May 2, 1994, the circuit court concluded that

> the 'anti-stacking' language in the instant automobile insurance policy is void as to uninsured coverage under West Virginia Code 33-6-31[4] as said policy contains no multi-car discount with respect to uninsured motorists coverage in spite of the fact that said policy contains a multi-car discount with regard to other coverages thereunder and therefore, the Court concludes that the uninsured motorists coverage can be stacked. It is therefore OR-DERED that there is an additional $25,000.00 of uninsured motorists coverage available to the plaintiffs under the terms of Federal Kemper's policy with the [Millers].

(footnote added).

The following question was subsequently certified to this Court:

> Is the anti-stacking language in a policy of automobile insurance, which insures two cars, valid and enforceable with respect to uninsured motorist coverage when there is no multi-car discount indicated by the declarations page but a comparison of the total premiums charged for separate policies shows that a discount is given for multiple cars on one policy though such discount is not specifically shown in connection with uninsured motorist coverage?

The circuit court answered this question in the negative. For the reasons discussed herein, we disagree with the circuit court's resolution of the certified question and find the anti-stacking language to be valid and enforceable.

## II.

Federal Kemper's primary contention is that this case is virtually indistinguishable from this Court's decision in *Russell v. State Auto. Mut. Insurance Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992), wherein the insured attempted to stack *underinsured* motorist coverage. The certified question in *Russell* was posed as follows: "'If an insured is covered under one (1) policy of automobile insurance which provides underinsured motorist coverage for two (2) separate vehicles and which contains antistacking language, is the insured entitled to stack the coverage?'" *Id.* at 82, 422 S.E.2d at 804. We answered that question in the negative, prohibiting the insured from stacking the underinsured motorist coverage. Considering the parity of the question in *Russell* to the one presently before us, we shall adhere to our reasoning in the former in our resolution of the latter.

## III.

■ Though there is no contention in the present case that the aforementioned anti-stacking provision is ambiguous, we, nevertheless, reiterate our prior holding that "'[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syl. pt. 1, *Russell, supra.* See *Ward v. Baker*, 188 W.Va. 569, 575, 425 S.E.2d 245, 251 (1992). Moreover, "'[l]anguage in an insurance policy should be given its plain, ordinary meaning.' Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va.

---

4. *W.Va.Code*, 33-6-31 [1988] provides, in pertinent part:

> (b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time[.]

*W.Va.Code*, 17D-4-2 [1979] states, in relevant part:

> The term 'proof of financial responsibility' as used in this chapter shall mean: Proof of ability to respond in damages for liability, on account of accident occurring subsequent to the effective date of said proof, arising out of the ownership, operation, maintenance or use of a motor vehicle ... in the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

430, 345 S.E.2d 33 (1986)." Syl. pt. 2, *Russell, supra.*

We find the aforementioned anti-stacking language to be clear and unambiguous. Accordingly, unless the policy language is contrary to statute or public policy, the most that Federal Kemper will pay for all damages resulting from any one accident is the limit of the uninsured motorist coverage found on the declarations page. *Russell,* 188 W.Va. at 83, 422 S.E.2d at 805. *See* syl. pt. 2, *Deel v. Sweeney,* 181 W.Va. 460, 383 S.E.2d 92 (1989).

## IV.

In *Russell,* we found, *inter alia,* that the anti-stacking language [5] in the insurance policy at issue was not contrary to the mandates of the underinsured motorist statute, *W.Va. Code,* 33–6–31(b) [1988].[6] Specifically, this Court determined that underinsured motorist coverage was offered and accepted in that case, as required by *W.Va.Code,* 33–6–31(b) [1988], and that the statute applies to each policy of insurance issued in West Virginia. We further concluded that the underinsured motorist statute "does not mandate that the amount of coverage be increased if the policy covers multiple vehicles." *Russell,* 188 W.Va. at 83, 422 S.E.2d at 805.

■ Similarly, though the *uninsured* motorist statute requires that every insurance policy in this state contain uninsured motorist coverage, there is no requirement that there be an increase in the amount of such coverage if a single policy covers two or more vehicles. *See W.Va.Code,* 33–6–31(b) [1988]. Moreover, the Millers had each of two vehicles insured, under a single policy of insurance, for $25,000 per person/$50,000 per acci-

dent. In that *W.Va.Code,* 33–6–31(b) [1988] and 17D–4–2 [1979], *supra,* require that uninsured motorist coverage be no less than $20,000 per person/$40,000 per accident, the policy at issue is clearly in compliance with these statutory provisions.

## V.

■ In *Russell, supra,* this Court reiterated the preeminent public policy of this state, evident in *W.Va.Code,* 33–6–31(b) [1988], that " 'in uninsured or underinsured motorist cases . . . the injured person [should] be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage.' " *Russell,* 188 W.Va. at 84, 422 S.E.2d at 806 (*citing State Automobile Insurance Co. v. Youler,* 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990)). *See Bell v. State Farm Mut. Auto. Ins. Co.,* 157 W.Va. 623, 627, 207 S.E.2d 147, 150 (1974) (uninsured motorist coverage, which is statutorily required, distributes "the burden of loss . . . among all owners of insured motor vehicles registered in West Virginia" thereby assuring "at least minimum relief from the consequences of a loss caused by an uninsured motorist.") Furthermore, as we indicated in *Youler,* 183 W.Va. at 565, 396 S.E.2d at 746, the statutory policy of full indemnification, as found in *W.Va.Code,* 33–6–31(b) [1988], applies to both uninsured and underinsured motorists coverage. "Consequently, the fact that uninsured motorist coverage is mandatory, while underinsured motorist coverage must be offered but may be declined, is a distinction without a difference[.]" *Id.* We, thus, see no conflict between our state's public policy and the anti-stacking language con-

---

**5.** The anti-stacking provision in *Russell* stated that " '[t]he limit of liability applicable to Uninsured Motorists Coverage or Underinsured Motorists Coverage is the most we will pay regardless of the number of: 1) "Insureds" [;] 2) Claims made; 3) Vehicles or premiums shown in the Schedule or in the Declarations; or 4) Vehicles involved in the accident.' " *Id.* at 83, 422 S.E.2d at 805.

**6.** That portion of *W.Va.Code,* 33–6–31(b) [1988] concerning underinsured motorist coverage states that no policy of insurance shall be issued or delivered in this state unless

such policy or contract . . . provide[s] an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

*See Russell,* 188 W.Va. at 83, 422 S.E.2d at 805.

tained in the insurance policy covering the Millers' two vehicles.

■ This Court, in *Russell*, acknowledged our holding in syllabus point 3 of *Youler, supra*, wherein we held that an insured may stack uninsured or underinsured motorist coverage contained in separate policies, despite policy language to the contrary:

'[s]o-called "anti-stacking" language in automobile insurance policies is void under *W.Va.Code*, 33–6–31(b), as amended, to the extent that such language is purportedly applicable to uninsured or underinsured motorist coverage, and an *insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same*, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident or injury.

Syl. pt. 3, *Russell, supra*. (emphasis added). However, in *Youler*, there existed two policies and there was no issue raised "regarding the premiums paid for the two policies as compared with the premium costs if only one policy had been issued." *Russell*, 188 W.Va. at 84, 422 S.E.2d at 806 (*citing Youler*, 183 W.Va. at 559 n. 2, 396 S.E.2d at 740 n. 2). Moreover, as plainly stated in syllabus point three above, anti-stacking language is ineffective where an "insured [is] covered *simultaneously by two or more uninsured or underinsured motorist policy endorsements[.]*" Syl. pt. 3, in part, *Youler, supra* (emphasis added). *See Russell*, 188 W.Va. at 84, 422 S.E.2d at 806. Therefore, as we concluded in *Russell*, our holding in *Youler* "does not govern the instant situation where only one policy is involved." *Russell*, 188 W.Va. at 84, 422 S.E.2d at 806.

Furthermore, we held in syllabus point 4 of *Russell, supra*, that " '[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.' Syl. Pt. 3, *Deel v. Sweeney*, 181 W.Va.

460, 383 S.E.2d 92 (1989)." *See* syl. pt. 1, *Thomas v. Nationwide Mut. Ins. Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992). As previously indicated, the anti-stacking language does not compromise the spirit and intent of the uninsured motorist statute, *W.Va.Code*, 33–6–31(b) [1988]. As we held in syllabus point 5 of *Russell, supra:*

West Virginia Code § 33–6–31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

Though a multi-car discount is not apparent on the declarations page in this case, the Millers do not dispute that they received such a discount. Similarly, the insured in *Russell* received a multi-car discount in return for taking out one policy instead of two. *Russell*, 188 W.Va. at 85, 422 S.E.2d at 807. In the present case, however, the Millers maintain that, because they received no discount specifically for uninsured motorist coverage, the anti-stacking provision is ineffective as to that coverage. We disagree.

Having contracted for only one policy of insurance, the Millers likewise bargained for only one uninsured motorist coverage endorsement. *Id.* In return, Federal Kemper "assum[ed] an increased risk of injury which could occur while [the Millers were] occupying the second vehicle as consideration for the second premium. [The Millers were] therefore receiving the benefit of that which [they] bargained for and should not receive more." *Id. See Allstate Insurance Co. v. Ashley*, 833 F.Supp. 583 (S.D.W.Va.1993), *aff'd* 37 F.3d 1492 (4th Cir.1994).

We conclude, therefore, that anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a

multi-car discount on the total policy premium. If no multi-car discount for uninsured or underinsured motorist coverage is apparent on the declarations page of the policy, the parties must either agree or the court must find that such a discount was given. In such event, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement. Thus, the certified question is answered in the affirmative.

Having answered the certified question, we dismiss this case from the docket of this Court and remand the case to the Circuit Court of Ritchie County for further proceedings consistent with this opinion.

Certified question answered; case remanded.