460 S.E.2d 454

**Ben F. MARVIN and Leah Marvin, Plaintiffs Below, Appellees,**

v.

**Frank R. LAVENDER, Sheriff of Raleigh County, as Administrator of the Estate of James Cephas Jackson, and Westfield Insurance Company, Defendants Below, Appellants.**

No. 22536.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1995.

Decided July 11, 1995.

---

320

Gregory W. Sproles, Breckinridge, Davis, Sproles & Stollings, Summersville, for appellees.

B. Karleton Kesner, Anita R. Casey, Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, for appellants.

PER CURIAM:

The Appellant, Westfield Insurance Company (hereinafter "Westfield"), appeals from a May 11, 1994, order of the Circuit Court of Nicholas County. The order essentially permitted the Appellees, Ben and Leah Marvin, to "stack" the underinsured motorist coverage contained in their Westfield automobile insurance policy. Westfield asserts that stacking is inappropriate under the Marvins' policy. After careful consideration of the briefs, record and oral argument, we agree. Accordingly, for the reasons set forth below, we hereby reverse the circuit court's ruling.

## I.

On March 16, 1992, Ben Marvin was injured when his 1988 Oldsmobile was struck by a vehicle owned and operated by James C. Jackson, an underinsured motorist.[1] Mr. Marvin sustained serious injuries to his legs, feet, ankles, face and other parts of his body as a result of this accident. At the time of the collision, the Marvins were insured under a Westfield automobile insurance policy. The policy contained, inter alia, a provision for underinsured motorists coverage and insured the 1988 Oldsmobile and three other vehicles owned by the Marvins.

The declarations page of the policy does not reflect a specific, multi-vehicle premium discount for underinsured motorists coverage.[2] It appears to be undisputed, however, that the Marvins did receive at least a general or "across-the-board" discount for insuring their multiple vehicles under a single Westfield policy. Westfield explains this general multi-vehicle discount, in part, by reference to an affidavit by Thomas W. McFadden, the Westfield casualty manager for personal lines. Mr. McFadden asserted in his affidavit that if each of the four vehicles had been

---

1. The record reflects that Mr. Jackson died as a result of the accident. Accordingly, Frank R. Lavender, the Sheriff of Raleigh County and administrator of Mr. Jackson's estate, has been substituted as a defendant.

2. The declarations page of the policy reflects a $3.00 premium per vehicle for the underinsured motorists coverage selected by the Marvins. The $3.00 rate does not appear to decrease in relation to the number of vehicles insured under the policy.

covered by four separate Westfield policies, the total premium payable would have been $1,374. By insuring all four vehicles under a single policy, however, the McFadden affidavit indicates that the Marvins received a general multi-vehicle discount which reduced the single-policy premium to $1,106.

While the Marvins apparently do not dispute that they received this general multi-vehicle discount, they do point to evidence which demonstrates that there was no multi-vehicle discount given specifically for underinsured motorists coverage. For instance, the Marvins note the following exchange between their attorney and Mr. McFadden at the latter's deposition:

Q. With regard to underinsured motorist ... [coverage,] how much was charged for each vehicle?

A. 25/50 $3.

Q. Was there any multi-car discount?

A. On that?

Q. Just for underinsured motorist.

A. Per se, no.

Subsequent to the accident, the Marvins reached a settlement with Mr. Jackson's liability insurance carrier for his liability limits of $20,000. Westfield consented to the settlement and waived its subrogation rights against Mr. Jackson's estate. Later, the Marvins entered negotiations with Westfield concerning the appropriate amount of underinsured motorists coverage to which they were entitled under their Westfield policy. Westfield ultimately agreed to pay the Marvins $25,000, the limits of the policy's underinsured motorists coverage. The parties, however, reserved the right to litigate the question of whether the underinsured motorists coverage could be stacked for the four automobiles covered by the Marvin's single policy with Westfield.

On February 26, 1993, the Marvins filed a two-count complaint in the Circuit Court of Nicholas County. Count One sought recovery for personal injuries sustained by Mr. Marvin and for loss of consortium suffered by Mrs. Marvin. Count Two petitioned for a declaratory judgment permitting the stacking of the underinsured motorists coverage available under the Westfield policy, thus resulting in a recovery of $25,000 per vehicle insured or $100,000.

The parties thereafter filed motions seeking a determination of the coverage issue contained in Count Two of the Marvins' complaint. On May 11, 1994, the circuit court entered an order which essentially held that since the Westfield policy did not provide a specific multi-vehicle discount for underinsured motorists coverage, the Marvins could stack that coverage for the four vehicles insured.

In its brief to this Court, Westfield primarily asserts two arguments to avoid stacking. First, Westfield relies on our decision in *Russell v. State Automobile Mutual Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992), and alludes to the following unambiguous anti-stacking language that was contained in the Marvins' policy:

**LIMIT OF LIABILITY**

A. If the Declarations indicates [sic] a single limit of liability for "each accident" for Underinsured Motorists Coverage, the limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident with an **underinsured motor vehicle.** This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

Second, again relying on *Russell,* Westfield argues that even if the viability of the above anti-stacking provision is contingent upon the presence of a multi-vehicle premium discount, a general multi-vehicle discount, rather than a specific underinsured motorists coverage discount, is sufficient to validate the anti-stacking language. In sum, Westfield concludes that this case is controlled by *Russell,* and that the Marvins are not entitled to stack their underinsured motorists coverage.

The Marvins respond, inter alia, that the anti-stacking language in their policy should be deemed void based upon our prior cases. In regard to the question of a discount, the Marvins suggest that the applicability of stacking is intimately tied to the question of whether the insured received a specific multi-

vehicle premium discount for the coverage in question. While they note that a multi-vehicle discount was given for some of their chosen coverages, they assert that since these coverages were separate and distinct from underinsured motorists coverage, a discount as to these distinct coverages is irrelevant. The Marvins also assert that *Russell* is distinguishable from the instant case because no specific multi-vehicle discount was given for underinsured motorists coverage herein. In sum, the Marvins maintain that in order to receive the benefit of their bargain, and to achieve full compensation, they must be permitted to stack the available coverages.

The precise question in this case is whether our decision in *Russell* makes the validity of anti-stacking language contingent upon the presence of a specific multi-vehicle discount for underinsured motorists coverage. We hold, consistent with our recent precedent, that it does not.

## II.

■ This case is controlled by our decision this term in *Miller v. Lemon,* 194 W.Va. 129, 459 S.E.2d 406 (1995), which clarified our holding in *Russell.* We stated as follows in *Miller:*

> Anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium. If no multi-car discount for uninsured or underinsured motorist coverage is apparent on the declarations page of the policy, the parties must either agree or the court must find that such a discount was given. In such event, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

*Id.,* Syl.Pt. 4.

■ In the instant case, it is undisputed, and the circuit court specifically found, that the Marvins (1) purchased a single insurance policy to cover their four vehicles; and (2) received a multi-car discount on their total policy premium. Further, the anti-stacking

provision in the instant case is materially identical to that contained in the policy at issue in *Lemon.* Given these undisputed facts, it is clear that the anti-stacking language in the Marvins' policy, and our recent decision in *Lemon,* restrict the Marvins' recovery to their policy limits of $25,000. As stated in *Lemon,* "Having contracted for only one policy of insurance, the ... [Marvins] likewise bargained for only one ... [underinsured] motorist coverage endorsement." *Id.* at 133, 459 S.E.2d at 410.

For the reasons set forth above, we conclude that the circuit court erred in determining that the Marvins were entitled to stack their underinsured motorists coverage. Accordingly, we hereby reverse the circuit court's order and direct that judgment be entered for Westfield on Count Two of the complaint.

Reversed.

BROTHERTON and RECHT, JJ., did not participate.

FOX, J., sitting by temporary assignment.

MILLER, Retired J., sitting by temporary assignment.