536 S.E.2d 135

Anthony IAFOLLA, Plaintiff
Below, Appellant,

v.

Thomas Ray TRENT, Individually and as
Administrator of the Estate of Brian
Keith Robinette, Defendant Below,

Travelers Insurance Companies,
Defendant Below, Appellee.

No. 26558.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 12, 2000.

Decided June 23, 2000.

Dissenting Opinion of Justice
Starcher June 28, 2000.

M. Timothy Koontz, Esq., Charleston,
West Virginia, Attorney for Appellant.

Avrum Levicoff, Esquire, Brown & Levicoff, Pittsburgh, Pennsylvania, Attorney for Appellee.

PER CURIAM:

This is an appeal by Anthony Iafolla from an order of the Circuit Court of Mingo County granting the appellees, Thomas Ray Trent and Travelers Insurance Companies, summary judgment in a personal injury action. In that action, the appellant sought to stack the underinsured motorist coverages contained in an insurance policy issued to him by Travelers Insurance Companies and covering three vehicles owned by him. In granting summary judgment, the circuit court concluded that stacking was precluded, and on appeal, the appellant challenges that conclusion.

## I.

### FACTS

On June 28, 1996, the appellant, Anthony Iafolla, sustained severe injuries in a motor vehicle accident caused by another driver, Brian Keith Robinette, who died in the accident. As a result of the accident, the appellant instituted a personal injury action in the Circuit Court of Mingo County against Thomas Ray Trent, the Administrator of the Estate of Brian Keith Robinette.

After the institution of the action, State Farm Insurance Company, Mr. Robinette's carrier, settled with the appellant for the full limit of Mr. Robinette's coverage. Thereupon, the appellant filed a claim with his own carrier, Travelers Insurance Companies to recover under the underinsured motorist language contained in his own policy.

The appellant's policy with Travelers Insurance Companies covered three vehicles. The policy documents indicated that the policy provided underinsured motorist coverage with a limit of liability of $300,000 per person and $300,000 per accident. The policy documents also showed that the appellant paid a premium of $56 for the underinsured motorist coverage on vehicle number one, $56 for the coverage on vehicle number two, and $56 for the coverage on vehicle number three. The actual language of the appellant's policy establishing underinsured motorist coverage contained anti-stacking language which stated:

The limits of liability applicable to Uninsured Motorists Coverage or Underinsured Motorists Coverage are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or in the Schedule of this endorsement; or

4. Vehicles involved in the accident.

In filing his claim with Travelers Insurance Companies, the appellant took the position that he was entitled to "stack," or recover, under each of the underinsurance coverages on each of his three vehicles. In effect, he claimed that there was a $900,000 underinsured motorist limit on the policy and that he was entitled to collect this amount. Travelers Insurance Companies took the position that the anti-stacking language in the appellant's policy precluded this and further took the position that the maximum amount that it owed the appellant under the underinsured motorist coverage in the appellant's policy was $300,000.

To resolve the parties' conflicting positions on the amount due, Travelers Insurance Companies intervened in the appellant's action against Thomas Ray Trent. Following the intervention, both Travelers Insurance Companies and the appellant filed motions for summary judgment on the issue of the appellant's right to stack the three underinsured motorist coverages. Travelers Insurance Companies also filed an affidavit which indicated that it had granted the appellant a multi-car discount on the appellant's policy, and argued that since it had granted a multi-car discount, the anti-stacking language contained in appellant's policy precluded the stacking of the underinsured motorist coverage on the three vehicles.

The trial court took the case under consideration, and by order dated September 16, 1998, granted Travelers Insurance Companies' motion for summary judgment. By the

same order the court denied the appellant's motion for summary judgment.

In granting Travelers Insurance Companies summary judgment, the trial court found that the affidavit submitted by Travelers Insurance Companies was uncontroverted and showed that the appellant had received a multi-car discount on his policy and that the appellant was, in fact, given such a multi-car discount. The court also stated:

> The law is well settled in West Virginia that anti-stacking language in an automobile insurance policy is valid and enforceable as to the underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium. *Miller v. Lemon*, [194 W.Va. 129] 459 S.E.2d 406, 410, 411 (W.Va.1995). *See also per curiam* Opinion in *Tiller v. Blevins*, [194 W.Va. 338] 460 S.E.2d 473 (W.Va.1995). The basis for permitting such anti-stacking language results from the determination that the multi-car discount signifies that the insured was receiving a reduced rate on his automobile insurance coverage in return for taking out only one policy instead of two or more policies insuring the same number of vehicles. *See Russell v. State Auto. Mut. Ins. Co.*, [188 W.Va. 81] 422 S.E.2d 803, 807 (W.Va.1992).

It is from the court's ruling that the appellant now appeals. He takes the position that the evidence adduced in the case fails to show that he was given a multi-car discount specifically for his underinsured motorist endorsements and that, given the status of the evidence, the trial court improperly granted summary judgment.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), the Court stated that: "A circuit court's entry of summary judgment is reviewed *de novo*." The Court has further held that: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syllabus Point 4, *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

## III.

### DISCUSSION

■ As has been previously stated, the appellant's policy contained anti-stacking language which indicated that the limits of the underinsured motorist coverage were $300,-000, regardless of the number of insured and regardless of the number of claims made. The appellant claims that this language did not limit his recovery because, he asserts, anti-stacking language in a multi-car policy is not valid as to an underinsured motorist endorsement unless a multi-car discount is given specifically for the underinsured motorist coverage, and because the discount in his policy was not given specifically for the underinsured motorist coverage.

In *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995), this Court recognized that anti-stacking language is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the policy premium. Specifically, the Court in *Miller v. Lemon* stated:

> We conclude, therefore, that anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium.

*Miller v. Lemon, id.* at 133–4, 459 S.E.2d at 410–11. Although other language in the *Miller* case might be interpreted as suggesting that the discount must be given specifically for the uninsured or underinsured premium, rather than the general policy premium, the facts of the *Miller* case show that the discount in that case was given on the total policy premium and was held to validate the anti-stacking language. The *Miller* policy did not segregate or designate a portion of

the discount as applying specifically to uninsured or underinsured motorist coverage.[1]

■ After the present appeal was filed, this Court in *Cupano v. West Virginia Insurance Guaranty Association*, 207 W.Va. 703, 536 S.E.2d 127 (2000), specifically addressed the question of whether a general policy discount was sufficient to validate anti-stacking language where uninsured or underinsured motorist provisions were concerned. In Syllabus Point 2 of *Cupano*, the Court concluded:

> Anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverages where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on at least one of the coverages included in the policy so that the insured pays less for his or her single multi-vehicle insurance policy than if a separate insurance policy for each vehicle had been purchased.

■ In view of the holding in the *Cupano* case, this Court believes that the trial court in the present case properly concluded that the law in West Virginia is that anti-stacking language in an automobile insurance policy is valid and enforceable as to underinsured motorist coverage where an insured purchases a single insurance policy to cover two or more vehicles and receives a general multi-car discount on the total policy premium.

Additionally, from a factual point of view, Travelers Insurance Companies did submit an affidavit indicating that the appellant was given a general multi-car discount on the policy in issue. That affidavit was not controverted by an affidavit filed in behalf of the appellant or by any other evidence in the case.

After reviewing the record, this Court concludes that there was no genuine issue as to the fact that a general, multi-car discount was given to the appellant, or as to any other material fact in the case, and that under such circumstances, entry of summary judgment for Travelers Insurance Companies was appropriate.

The judgment of the Circuit Court of Mingo County is, therefore, affirmed.

Affirmed.

Justice McGRAW dissents.

STARCHER, Justice, dissenting:

(Filed June 28, 2000)

I dissent because the majority opinion chose not to apply, for reasons not discussed, our recent holding in *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000). In *Mitchell*, this Court applied several insurance statutes enacted by the Legislature, and held that when an insurance company relies upon an exclusion in an insurance policy to avoid providing coverage, then the insurance company bears the burden of proving (1) that it adjusted the policy premium so that the premium was consistent with the amount of coverage; and (2) that the premium adjustment and the exclusion were plainly communicated to the policyholder. Neither one of these requirements was met in this case.

It is well-settled law that an insurance company may include an "anti-stacking" exclusion in an automobile insurance policy pursuant to *W.Va.Code*, 33–6–31(k) [1995]. *See Russell v. State Auto Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992). As we stated in *Miller v. Lemon*, 194 W.Va. 129,

---

1. As is indicated by the facts in the body of the *Miller* opinion, as well as in note 2 of the decision, the Millers had previously had an automobile policy issued on one vehicle for which they had previously paid a total premium of $136. Seven dollars of this premium was for uninsured motorist bodily injury coverage, and one dollar was for uninsured motorist property damage coverage. In a later policy, the Millers paid a total policy premium of $214 for two vehicles, and the premium in that policy for uninsured motorist bodily injury coverage was again seven dollars, and for uninsured motorist property damage coverage was one dollar. Thus, in the *Miller* case, the Millers did not receive a discount for the specific endorsement premium. Instead, they received an overall policy discount of $58. The Court, nonetheless, concluded that the general $58 discount was adequate to render the anti-stacking language in the Millers' policy effective.

459 S.E.2d 406 (1995), when a policyholder buys a single policy to cover two or more vehicles, and as part of the "bargain" with the insurance company gets a multi-car discount on the premiums, then any "anti-stacking" exclusion in the policy can be enforceable. The Court's thinking in *Miller v. Lemon* was that, in theory, the policyholder and insurance company had reached an arms-length agreement: in return for lower premiums on two vehicles, the policyholder agreed to lower coverage through the operation of the anti-stacking exclusion.

The key to enforcing an anti-stacking exclusion is that the policyholder must have somehow known about and agreed to the exclusion, and at a minimum, known about and agreed to the reduced premiums. The policyholder must learn about the reduced premium and reduced coverage before a loss occurs—otherwise, how can there be an agreement on the policy terms? In explaining how courts are to apply *W.Va.Code*, 33-6-31(k) to an exclusion such as an anti-stacking one, this Court stated, at Syllabus Point 5 of *Mitchell*, that:

> When an insurer incorporates, into a policy of motor vehicle insurance, an exclusion pursuant to *W.Va.Code* § 33-6-31(k) (1995)(Repl.Vol.1996), the insurer must adjust the corresponding policy premium so that the exclusion is "consistent with the premium charged."

Additionally, citing to our seminal case adopting the doctrine of reasonable expectations, we stated at Syllabus Point 8:

> "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syllabus point 10, *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

In the instant case, the circuit court found that Travelers Insurance Companies filed an affidavit—after the loss occurred, during the course of litigation—indicating that the policyholder had received a multi-car discount on his various policies, and that because of this adjustment to the policy premiums, the policyholder had "bargained" for the anti-stacking language in his three automobile insurance policies. We made clear in *Mitchell*, however, that an "after-the-fact" affidavit showing a premium adjustment, an affidavit that magically appears during the course of a lawsuit well after a policyholder has made a claim, is insufficient alone to support the enforceability of a policy exclusion.

Our uninsured motorist statutes require that the policyholder be told, up front, when they are buying the policy, in conspicuous, plain, clear language, that their premiums have been adjusted to reflect an exclusion or other condition in a policy. There was no evidence in the record of this case that the policyholder was ever told he received a "multi-car discount" in return for his "agreeing" to the anti-stacking language in the policy. In fact, there was no evidence to even show he was told about the existence of the anti-stacking language, or any evidence that its effect on his coverage was explained to him. As we said repeatedly in *Mitchell*, state law prohibits an insurance company from including in a policy "exceptions or conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract"—and an exclusion is deceptive when its existence and effect is not explained to a policyholder.

In sum, there was no bargaining going on between the policyholder and the insurance company in this case. The insurance company surprised the policyholder, and told him he didn't buy what he thought he was buying long after it took—and kept—his money. The Legislature did not intend such a patently unfair result when it enacted *W.Va.Code*, 33-6-31(k).

I would have reversed the circuit court's order and remanded the case for further hearings pursuant to our holding in *Mitchell*. I therefore respectfully dissent.