IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

_____

No. 16-0750

_____

FILED

May 31, 2017

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Plaintiff below, Petitioner

v.

STEVE SAYRE, as Administrator of the Estate of Robert Sayre,
Defendant below, Respondent

_____

Appeal from the Circuit Court of Jackson County
Honorable David W. Nibert
Civil Action No. 10-C-144

REVERSED AND REMANDED

_____

Submitted: May 23, 2017
Filed: May 31, 2017


Don C.A. Parker, Esq.                     George B. Morrone III, Esq.
Glen A. Murphy, Esq.                      Mundy & Associates
Spilman Thomas & Battle, PLLC             Huntington, West Virginia
Counsel for Petitioner

                                          Carrie L. Newton, Esq.
                                          Ripley, West Virginia
                                          Counsel for Respondent


CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "West Virginia Code § 33-6-31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement." Syl. Pt. 5, *Russell v. State Auto. Mut. Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992).

2. An insured is not entitled to stack underinsured motorist coverage for every vehicle covered by a single policy where the insured received a multi-car premium discount and the policy contains language expressly limiting the insurer's liability regardless of the number of vehicles insured under the policy.

LOUGHRY, Chief Justice:

The petitioner, Government Employees Insurance Company ("GEICO"), appeals from the July 13, 2016, order of the Circuit Court of Jackson County granting summary judgment to the respondent, Steve Sayre,[1] in connection with determining the amount of underinsured motorist insurance ("UIM") that is owed by GEICO to Mr. Sayre. Finding an ambiguity in the GEICO policy language, the trial court ruled that, because there were two underinsured motorists involved in this case, the UIM coverage was triggered separately by each of those motorists. GEICO argues that the circuit court erred, both in its finding of ambiguity, and in improperly applying the policy language to require GEICO, contrary to policy limits, to pay double the amount of UIM coverage purchased by the respondent. Upon our careful review of this matter, we conclude that the circuit court erred and, accordingly, reverse.

## I. Factual and Procedural Background

The decedent, Robert Keith Sayre, died from injuries sustained in a car accident on August 21, 2008, in Jackson County. At the time of the accident, the decedent

---

[1]Mr. Sayre filed the initial wrongful death suit individually and as administrator of the estate of his son, Robert Keith Sayre; in this declaratory judgment action Mr. Sayre is named solely as the estate administrator.

1

was a guest passenger in a vehicle operated by Richard Ryan Smith.[2]  A second vehicle was involved in the accident, which was operated by Kurtis Barnett.  The accident was determined to be proximately caused by the independent negligence of both drivers of the two vehicles.  There is no dispute based on the damages involved and the availability of insurance that each of the vehicles was driven by an underinsured motorist.  It is further undisputed that the decedent was covered by separate automobile policies–one issued by GEICO and one by 21st Century.[3]

GEICO filed the underlying declaratory judgment action on September 16, 2010, to resolve the issue of UIM coverage.[4]  Both GEICO and Mr. Sayre filed motions for summary judgment on the issue of whether the respondent was entitled to an additional $20,000 of UIM insurance coverage rather than the $20,000 policy limits that GEICO had already tendered.[5]  By its ruling issued on July 13, 2016, the circuit court granted summary

---

[2]Mr. Smith also died as a result of the accident.

[3]Each of the policies included endorsements providing for UIM coverage.  Each of the two policies insured two vehicles owned by Mr. Sayre and both of the polices provided a multi-car discount with regard to the premium.

[4]On August 20, 2010, Mr. Sayre filed a wrongful death action against Kurtis Barnett and his father, as well as James Smith and Theresa K. Smith, the parents of Richard Smith.  Mr. Sayre named GEICO as a defendant in that action and sought relief from it for bad faith and unfair trade practices.

[5]The UIM benefits under the GEICO policy were $20,000 per "each person" and $40,000 per "each occurrence."

judgment to Mr. Sayre, ordering GEICO to pay an additional $20,000 in UIM coverage based on the existence of two underinsured motorists involved in the accident.[6] It is from this ruling that GEICO seeks relief.

## II. Standard of Review

Our review of the circuit court's decision to grant summary judgment is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). As we recognized in *Payne v. Weston*, 195 W.Va. 502, 466 S.E.2d 161 (1995), "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal." *Id.* at 506-07, 466 S.E.2d at 165-66. Mindful of this governing standard, we proceed to determine whether the circuit court erred in its determination that additional UIM insurance coverage was available in this case.

## III. Discussion

Because this case revolves around the interpretation of the UIM endorsement language, our analysis is necessarily controlled by the policy language. *See* Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970) ("Where the

---

[6]The drivers of each of the two vehicles involved in the accident are the underinsured motorists.

3

provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."). The policy amendment providing for UIM extends coverage for "bodily injury and property damage which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle." Such coverage comes into play "only after the limits of liability under any applicable liability policies or bonds have been exhausted by payment of judgments or settlements." The dispute at issue concerns the meaning of the section of the Underinsured Motorists Amendment that sets forth "LIMITS OF LIABILITY." That section provides, in pertinent part, the following conditions:

> Regardless of the number of autos or *trailers* to which this policy applies:
>
> 1. The Underinsured Motorists Bodily Injury Liability limit for "each person" less any liability coverage available to the *insured* from the tortfeasor or tortfeasors is the maximum we will pay for damages for *bodily injury*, including all derivative claims and any claim for damages for care and loss of services, to one person in one accident;
>
>      . . .
>
> 4. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the Declarations.

GEICO takes the position that condition number one makes patently clear that the underinsured per person policy limits of $20,000 "is the maximum we will pay for

4

damages for **bodily injury**." Mr. Sayre looks instead to condition number four, which states that "the limits of liability shall apply separately to each auto." He maintains that, because there were two underinsured motorists involved in the accident at the center of this dispute, the $20,000 in UIM coverage applies to each of those motorists for an aggregate amount of $40,000 in UIM benefits. We examine the merits of each of these contentions.

In making its argument, GEICO stresses that the policy at issue unambiguously defined its provision of a $20,000 "each person" limit of liability for UIM benefits "[r]egardless of the number of autos . . . to which this policy applies." Because the decedent was the only insured under the policy involved in the subject accident, GEICO insists the "each person" policy limit unequivocally governs the issue of UIM coverage. Moreover, GEICO maintains that the circuit court erred by framing its ruling on a finding that the subject policy does not "specifically limit liability based upon the *number of underinsured motorists involved in a crash*." As GEICO explains, the circuit court's analysis both misapprehends the meaning of the policy language in dispute and contravenes well-established tenets of insurance law that permit anti-stacking provisions where multiple cars are insured under one policy with a discernable premium discount.

5

Beginning with this Court's decision in *Shamblin v. Nationwide Mutual Insurance Company*, 175 W.Va. 337, 332 S.E.2d 639 (1985), the validity of anti-stacking language in an insurance policy has been settled:

> A limitation of liability clause within an automobile liability insurance policy which limits coverage for any one occurrence, regardless of the number of covered vehicles, does not violate any applicable insurance statute or regulation, and there is no judicial policy that prevents an insurer from so limiting its liability and yet collecting a premium for each covered vehicle because each premium is for the increased risk of an "occurrence."

*Id.* at 339, 332 S.E.2d at 640, syl. pt. 5. In *Russell v. State Automobile Mutual Insurance Company*, 188 W.Va. 81, 422 S.E.2d 803 (1992), we resolved the related and specifically apposite issue of whether a policy providing for underinsurance coverage for two separate vehicles that contained anti-stacking language was enforceable. As we made resoundingly clear:

> West Virginia Code § 33-6-31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, *the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement*.

*Russell*, 188 W.Va. at 81-82, 422 S.E.2d at 803-04, syl. pt. 5 (emphasis supplied).

6

Explaining the rationale underlying our ruling in *Russell*, we stated:

[I]t is easily discernible that the reason a single policy was issued rather than multiple policies was that the premium for underinsured motorist coverage on the second vehicle was set at a lesser rate than the premium for the first vehicle. Furthermore, because of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsured motorist coverage endorsement. This multi-car discount is of particular import since it signifies that the respondent was receiving a reduced rate on his automobile insurance in return for taking out only one policy instead of two. Meanwhile, the insurer was assuming an increased risk of injury which could occur while the insured was occupying the second vehicle as consideration for the second premium. The insured was therefore receiving the benefit of that which he bargained for and should not receive more.

188 W.Va. at 85, 422 S.E.2d at 807. We later clarified that the validity of anti-stacking language applicable to UIM coverage was not dependent on the provision of a specific multi-vehicle discount for that particular type of coverage, as had been the case in *Russell*. *See* Syl. Pt. 4, in part, *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995) ("Anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium."); *accord Marvin v. Lavender*, 194 W.Va. 319, 322, 460 S.E.2d 454, 457 (1995) (holding that *Russell* decision does not make validity of anti-stacking language contingent

7

upon specific multi-vehicle discount for UIM coverage). There is no dispute that the GEICO policy purchased by Mr. Sayre contained a multi-car premium discount.

This Court considered an issue analogous to the issue at hand when addressing the insured's argument in *Payne* that he was entitled to recover twice the policy limits because two vehicles were covered by the subject policy. In examining this contention, we looked to the limiting language that "plainly and unambiguously" set forth "the 'each person' policy coverage limit" as well as language verbatim to condition four in GEICO's policy providing that the terms of the policy apply separately to each vehicle.[7] 195 W.Va. at 507, 466 S.E.2d at 166. Emphasizing the singular coverage trigger of the accident (an "occurrence") and the express policy language limiting the insured's liability, we rejected the insured's contention that the policy limits of an insurance policy should be multiplied by the number of vehicles covered by that policy. *Id.* at 511-12, 466 S.E.2d at 170-71; *see also Shamblin*, 175 W.Va. at 343, 332 S.E.2d at 644 (concluding that negligent acts of multiple tortfeasors caused just one occurrence which in turn invoked just one policy limit of liability).

---

[7]The significance of this "separate application" language, as we explained in *Payne*, is "merely [to] assure[] the applicability of the policy to whichever car is involved in an accident, or to all the cars, and [it] does no more." 195 W.Va. at 509 n.8, 466 S.E.2d at 168 n.8. (internal citation omitted).

While *Payne* involved an attempt to stack liability coverage based on the number of vehicles insured under a multi-car policy, we specifically addressed whether UIM coverage could be stacked based on the number of cars insured in *Linkinoggor v. Nationwide Mutual Insurance Company*, 200 W.Va. 265, 489 S.E.2d 19 (1997). Finding the limiting language that stated "[t]he insuring of more than one person or vehicle under this policy does not increase our Underinsured Motorists payment limits" to be unambiguous in meaning, we rejected the insured's attempt to stack UIM coverage. *Id.* at 269, 489 S.E.2d at 23.

Notwithstanding the similar limiting language in the GEICO policy–language that "cannot be subject to divergent interpretations"[8]– the trial court focused its analysis on the absence of language which "limit[ed] liability based upon the number of underinsured motorists involved in a crash." This analysis, as well as the trial court's finding of ambiguity "with respect to the various conditions under which UIM coverage is limited" is misguided and devoid of merit. Of critical import is the language prominently set forth in the introductory language to the Limits on Liability of the UIM endorsement that applies to each condition–"*regardless of the number of vehicles subject to this policy*"–which is then followed by the unmistakable limiting of the amount of UIM liability to the UIM "per person" limit of $20,000 as the "maximum we will pay for bodily injury." This language

[8]*Payne*, 195 W.Va. at 509, 466 S.E.2d at 168.

9

states in no uncertain terms that the "per person" limit of UIM coverage is the maximum amount of UIM coverage available in this circumstance.[9] Contrary to the circuit court's reasoning, the absence of language directly linking the limits of UIM coverage to the number of underinsured tortfeasors has no stultifying effect on the unambiguous limiting language contained in the UIM amendment.

While the existence of an underinsured motorist is what triggers the payment provisions of UIM coverage, the existence of multiple underinsured motorists does not operate, as the circuit court ruled, to "expand[] UIM coverage where there is more than one insured vehicle." This is because the amount of UIM coverage is not correlatively linked to the number of underinsured motorists any more than the amount of liability coverage is linked to the number of tortfeasors. *See Shamblin*, 175 W.Va. at 343, 332 S.E.2d at 644 (recognizing that "two antecedent negligent acts do not constitute two 'occurrences'"). The only thing that could increase the amount of UIM coverage, as in fact occurred in this case, is the existence of a second insurance policy providing for UIM.[10] *See Payne*, 195 W.Va. at 511, 466 S.E.2d at 170 (stating that whereas "liability insurance coverage is triggered only when the vehicle involved in the accident is covered under the policy, . . . stacking is

---

[9]Had two insureds been involved in that accident, the decedent and one of his insured family members, then the "per occurrence" UIM limit of $40,000 would have applied.

[10]Mr. Sayre was awarded $100,000 in UIM benefits under the 21st Century policy because that insurer was unable to demonstrate it had tendered a "reasonably commercial offer of underinsured motorist coverage" to him. *See* W.Va. Code § 33-6-31d(b) (2011).

10

triggered only when the insured is covered simultaneously by two or more policies providing uninsured or underinsured coverage").

In viewing condition number four, the "separate application" language, as a mechanism by which to multiply the amount of UIM coverage by the number of vehicles insured, the circuit court and the respondent have misconstrued the meaning of this language. In providing that the policy limits apply separately to each insured vehicle, GEICO clarified, in customary language, that for each vehicle insured there is a total amount of insurance available upon a policy occurrence or trigger. For example, if both of Mr. Sayre's vehicles were contemporaneously involved in an accident, each of them would separately be subject to the $20,000/$40,000 per person/per occurrence amount of liability. The second vehicle would not be left uncovered by virtue of the policy limits having been met by the accident involving the first insured vehicle. More importantly, however, because neither of the vehicles involved in the subject case were the insured's vehicles, condition number four is wholly inapplicable to this case. *See supra* note 7. Thus, the circuit court's reliance on this policy language as a basis for doubling the amount of UIM coverage in this case was contrary to both the policy language and to our law authorizing the use of anti-stacking provisions in insurance policies. *See Shamblin*, 175 W.Va. at 344, 332 S.E.2d at 646 (recognizing validity of anti-stacking insurance policy language limiting liability regardless of the number of vehicles to which this policy applies).

11

The trial court reasoned that there was nothing in the GEICO policy "which prevents each of the two underinsured motorists from activating a per person limit on separate insured motor vehicles." In suggesting that each underinsured motorist involved in an accident separately triggers the availability of UIM insurance under one policy, the circuit court wrongly sought to link each underinsured motorist to a specific insured vehicle. As discussed above, while the right to UIM coverage necessarily requires the existence of an underinsured motorist, the provision of UIM coverage is not connected to an insured's vehicle; instead, the coverage is linked to the exhaustion of the "limits of liability under any applicable liability policies." In seeking to connect separate policy limits for each insured vehicle with each underinsured motorist, the circuit court misapprehends the nature of UIM. Rather than springing into existence as a result of the matching of an underinsured motorist with an insured's vehicle, the coverage is not dependent on the number of insured vehicles. As to the circuit court's insistence that no policy language prevented it from ruling that an additional $20,000 of UIM coverage was available, we need only refer to condition number one, which expressly limits the amount of UIM coverage to the maximum "per person" amount of UIM coverage–$20,000.

The circuit court erred in faulting GEICO for not including an express limitation of its UIM liability based on the number of tortfeasors. This Court has made clear what constitutes effective limiting language and the language included in the GEICO policy

12

is consistent with prior cases in which we have upheld similar limiting language for anti-stacking purposes. *See Linkinoggor*, 200 W.Va. at 269, 489 S.E.2d at 23, *Shamblin*, 175 W.Va. at 344, 332 S.E.2d at 646. The circuit court, in awarding the respondent an additional $20,000 of UIM coverage, tortured the language of the policy and granted Mr. Sayre benefits for which he had neither contracted or paid. In choosing to purchase a singular insurance policy from GEICO to insure his two vehicles, Mr. Sayre purchased just one UIM amendment to be added to his policy. He did not purchase two UIM amendments with two separate sets of liability limits from GEICO. Thus, when the circuit court doubled his UIM coverage from the $20,000 "per person" limit that he paid for, it improperly awarded him $20,000 more UIM coverage than he had purchased.

As this Court made clear in *Russell*, an insured, such as Mr. Sayre, who purchases a multi-car insurance policy that contains enforceable anti-stacking language is only entitled to recover up to the policy limits set forth in the single policy endorsement. *See Russell*, 188 W.Va. at 81-82, 422 S.E.2d at 803-04, syl. pt. 5. Accordingly, we hold that an insured is not entitled to stack underinsured motorist coverage for every vehicle covered by a single policy where the insured received a multi-car premium discount and the policy contains language expressly limiting the insurer's liability regardless of the number of vehicles insured under the policy.

13

## IV.  Conclusion

Based on the foregoing, the July 13, 2016, decision of the Circuit Court of Jackson County is reversed, and this matter is remanded for entry of an order granting summary judgment to GEICO on the issue of additional UIM coverage.

Reversed   and   remanded.

14